IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL A. LOMBARDO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-1385 |
| | : | |
| COLIN WESCOE, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

YOUNGE, J.                                                                                                    APRIL 23, 2024

*Pro Se* Plaintiff Michael A. Lombardo, a prisoner currently incarcerated at the Lehigh County Jail, brings this action alleging violations of his civil rights. He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Lombardo *in forma pauperis* status and permit Lombardo to proceed on his excessive force and assault and battery claims. The balance of his Complaint will be dismissed. Lombardo will be given an opportunity to proceed on the claims that pass statutory screening, or to file an amended complaint.

**I.      FACTUAL ALLEGATIONS**[1]

The allegations of the Complaint concern an incident that occurred on December 8, 2023 in Allentown, Pennsylvania. (Compl. at 1, 3.)[2] Named as Defendants are: Trooper Colin

---

[1] The factual allegations set forth in this Memorandum are taken from Lombardo's Complaint and publicly available dockets. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim). The Complaint contains two pages that may have been inadvertently included with Lombardo's submission to this Court. (*See* Compl. at 5 and 8.) The first is one page of an incomplete, unsigned form Private Criminal Complaint. (*Id.* at 5.) The second may be a page from a habeas petition that Lombardo filed in state court, as he refers to himself therein as petitioner. (*Id.* at 8; *see also Commonwealth v. Lombardo*, CP-39-CR-0000986-2024 (C.P. Lehigh).) In any event, the information contained in these pages is duplicative of the allegations contained elsewhere in the Complaint.

[2] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Wescoe; Det. Sgt. Hammer; Det. P. Maczko; Det. Thomas Rasich, and various John and Jane Does.  (*Id.* at 1.)  Lombardo seeks to bring claims against the Defendants in their individual and official capacities.  (*Id.* at 9.)

Lombardo alleges that he entered the parking lot of the Super 8 Motel on December 8, 2023, at approximately 12:00 p.m., and that he had been a paying guest there since December 6, 2023.  (*Id.* at 3.)  The window of the vehicle in which he was a passenger was down, as it was sunny and he was smoking.  (*Id.*)  As Lombardo exited the passenger side of the vehicle, he "was immediately attacked and a gun was put in [his] face and the person said, 'State Police, move and I'll shoot you in the face motherfucker!'" (*Id.*)  Lombardo alleges that he was struck across his face and head with the gun, and then "hip-tossed to land on the ground" on his head.  (*Id.*)  He asserts that "immediately my jewelry was ripped from my neck as I was being cuffed by Det. Sgt. Hammer #349, the officer who struck me with his gun.  As my teeth began to go down my throat, I began to choke."  (*Id.*)  Lombardo claims that Det. Maczko "started emptying my pockets and then grabbed me between my legs by my penis and screamed, 'Where's it at, motherfucker & why'd you run?'"  (*Id.*)  Lombardo attempted to answer and his teeth began to fall out of his mouth due to being struck with the gun.  (*Id.*)  Lombardo contends that Det. Maczko "took hundreds of dollars cash, 2 iPhones, prepaid credit cards, government insurance card, Social Security card, & 3 key cards from room 221 & 2 BMW key fobs."  (*Id.*)  According to Lombardo, Det. Maczko sexually assaulted him and "possibly robbed" him.  (*Id.* at 4.)

According to Lombardo, his "skull was cracked" and his teeth were knocked out from the blow from Det. Hammer's gun.  (*Id.*)  He claims that "officers" stood over him, laughing and pointing at his teeth that were "all over the ground," and that "someone said 'we should probably get EMS here.'"  (*Id.*)  Lombardo alleges that he went in and out of consciousness, and at one

2

point overheard someone say, "[t]he Royal is on fire, people are burning, we need to go." (*Id.*) He claims that officers then screamed at him, asking him whether he did that, and trying to make him admit to it. (*Id.*)

Lombardo claims that Trooper Wescoe arrived and "immediately he and other officers grabbed [me] and had to carry me to his cruiser because I could not walk." (*Id.*) The Trooper asked Lombardo where his car was and said that he had "seen video" and had pictures of Lombardo. (*Id.*) As alleged, Lombardo was put in the Trooper's vehicle while other officers gathered who said that they were searching Room 221. (*Id.*)

With the assistance of officers because he was unable to stand on his own or walk in a straight line, Lombardo was taken to the elevator, then to Room 221. (*Id.* at 6.) Lombardo alleges that none of his keycards worked to open the room, but that "police" called a woman who produced a keycard to open the door. (*Id.*) Lombardo alleges that "immediately upon entering the room, authorities began opening closed bags, cases, and boxes. I asked again for a lawyer and for a doctor." (*Id.*) He claims he was refused both and was taken to State Police headquarters, but when his identity was revealed, it was discovered that he had an outstanding warrant. (*Id.*) Lombardo avers that he had been in custody for three hours at this point. (*Id.*)

Lombardo was "released to Bethlehem City Police to be processed," and was taken to their headquarters where he was strip searched. (*Id.*) He claims that the strip search was unnecessary and was done to humiliate him. (*Id.*)

Based on these allegations, Lombardo claims that he was subjected to excessive force, as well as assault and battery; that he was denied medical care; and that certain Defendants failed to intervene in the violations to his constitutional rights. (*Id.* at 7, 9-10.) As relief, he seeks

monetary damages.  (*Id.* at 12.)  Lombardo further requests that his case be placed on the Civil Rights Panel for appointment of counsel.  (*Id.*; *see also* ECF No. 5.)

A review of the publicly available state court docket system reveals that Lombardo currently has three active criminal prosecutions.  One case pertains to events described above.  *See Commonwealth v. Lombardo*, CP-39-CR-0000986-2024 (C.P. Lehigh).  Two pertain to an incident on November 17, 2023, for which Lombardo has commenced a separate matter in this court.  *See Commonwealth v. Lombardo*, CP-39-CR-0000987-2024 (C.P. Lehigh); *Commonwealth v. Lombardo*, CP-39-CR-0000988-2024 (C.P. Lehigh); *Lombardo v. Zanelli, et al.*, Civil Action No. 24-1383.

## II.     STANDARD OF REVIEW

The Court will grant Lombardo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366,

---

[3]     However, since Lombardo is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Lombardo is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

### III. DISCUSSION

The Court understands Lombardo to raise constitutional claims under 42 U.S.C. § 1983 pursuant to the Court's federal question jurisdiction, as well as state tort law claims. (*See* Compl. at 3.) Section 1983, the vehicle by which federal constitutional claims may be brought in federal court, "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and,

5

therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").[4]

### A.   John Doe Defendants and Personal Involvement

Lombardo seeks to bring his claims against the individually named Defendants, as well as various John and Jane Doe Defendants. In each Count of the Complaint, Lombardo lists the individual Defendants against whom he seeks to present each claim and includes Doe Defendants. (*See* Compl. at 7, 9-10.) Specifically, he presents the excessive force claim against

---

[4]   As noted above, Lombardo seeks to bring claims for money damages against the Defendants in their official capacities as well as their individual capacities. (*See* Compl. at 9.) Official capacity claims are indistinguishable from claims against the governmental entity that employs the Defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). To the extent Defendants Wescoe, Hammer, Maczko, and Rasich are employees of the Pennsylvania State Police, any official capacity claim for money damages asserted against them is not plausible. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Thus, all official capacity claims for money damages against Commonwealth employees will be dismissed.

To extent any of the named Defendants are municipal employees, Lombardo has not alleged a basis for municipal liability against them. *See Monell*, 436 U.S. at 694 (to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights). Lombardo has not pled a municipal policy or custom with respect to any of the alleged constitutional violations, that such policy or custom caused the constitutional violation, or any municipal failures amounting to deliberate indifference.

The Court will address Lombardo's damages claims against the Defendants in their individual capacities below.

6

three John Doe Defendants; the assault claim against three John Doe Defendants; the battery claim against three John Doe Defendants; the deliberated indifference to medical care claim against three John Doe Defendants; and the failure to intervene claim against ten John Does and five Jane Does. (*See id.*) He avers generally that "[a]t all relevant times these individuals were officers of the Pennsylvania State Police, the Special Operations/Vice Unit, and the Bethlehem City Police Dept." (*See id.*)

The manner with which Lombardo has pled his claims makes it unclear whether the same John Does are involved in each of the claims, or whether different individuals are alleged to have participated in the various constitutional violations. Lombardo does not provide any factual allegations regarding the behavior of any individual Doe Defendant. If Lombardo wishes to name individuals for whom he does not have any identifying information, he may refer to those individuals as John Doe #1 or John Doe #2, etc., when describing their alleged behaviors.

Furthermore, to the extent that Lombardo has, at times, collectively referred to "officers" without specifying what each individual did or did not do that violated his rights, pleading in such a manner is insufficient to put a defendant on notice of the conduct with which he is charged and does not state a plausible claim. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Moreover, Lombardo's assertions that a group of Defendants are liable to him or generally violated his rights by, for example, acting with deliberate indifference in an unspecified manner, is insufficient to state a claim. *See Jutrowski v. Twp. of*

7

*Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677).

   **B.**  **Claims Based on the Use of Excessive Force**

  Lombardo's Complaint alleges that Det. Hammer and Det. Maczko, as well as three John Does used excessive force during the December 8 incident. (Compl. at 7.) "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test."). "Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, . . . and certain factors, including: 'the facts and circumstances of each particular case, . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Graham*, 490 U.S. at 386)). At this early stage of the litigation, Lombardo has alleged sufficient facts in support of his excessive force claims against Det. Hammer and Det. Maczko to proceed at this time.

  Lombardo also alleges that Defendants Hammer, Maczko, Rasich, as well as three John Does committed assault and battery. (*See* Compl. at 7, 9.) Although Lombardo invokes Pennsylvania criminal statutes as well as the Fourth Amendment when presenting these claims, the Court understands Lombardo's allegations to present claims under Pennsylvania tort law. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery

8

is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)); *see also C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (a battery is harmful or offensive contact with another person).

As an initial matter, while Lombardo seeks to raise assault and battery claims against Det. Rasich, the factual allegations of the Complaint describe no actions taken by him. Indeed, Lombardo does not describe Rasich's involvement in any of the alleged constitutional violations. Consequently, Lombardo has not met the *Iqbal* pleading standard with respect to this Defendant and the assault and battery claims. The assault and battery claims against Det. Rasich will be dismissed.

Otherwise, the allegations supporting the assault and battery claims are the same as those supporting Lombardo's excessive force claims; therefore, the Court declines to dismiss these claims at this stage of the litigation. *See Short v. Webb*, No. 18-4130, 2019 WL 4573254, at *5 (E.D. Pa. Sept. 20, 2019) (declining to dismiss, *inter alia*, state law claims of assault and battery because such claims were based on the same allegations that supported the excessive force claim that was permitted to proceed). Accordingly, the Court will also allow Lombardo's state law tort claims of assault and battery against Det. Hammer and Det. Maczko to proceed.

### C. Failure to Intervene

Lombardo also brings failure to intervene claims against Det. Hammer, Det. Maczko, Det. Rasich, Trooper Wescoe, ten John Does, and five Jane Does. (Compl. at 10.) Claims for failing to intervene in an excessive force scenario are also analyzed under the Fourth Amendment. *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020). Under a failure to

9

intervene theory, a police officer may be directly liable under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). "'A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force', but only 'if there is a realistic and reasonable opportunity to intervene.'" *El*, 975 F.3d at 335 (quoting *Smith*, 293 F.3d at 650-51). "[T]he duration of the incident is key to determining whether there was a reasonable opportunity." *Id.*

Here, Lombardo's failure to intervene claims are undeveloped. He simply does not describe with facts how any named Defendant, much less any John or Jane Doe Defendant, failed to stop the use of force by another officer, and that any such Defendant had a realistic and reasonable opportunity to intervene, but did not do so. *See, e.g., Howard v. Hollenbaugh*, No. 20-0845, 2021 WL 602722, at *6 (M.D. Pa. Feb. 16, 2021) (dismissing failure to intervene claim where plaintiff failed to allege specific facts from which a reasonable factfinder could infer that the defendant had a reasonable and realistic opportunity to intervene prior to each use of excessive force); *Hazelton v. Savage*, No. 19-2027, 2020 WL 6068153, at *6 (M.D. Pa. Aug. 3, 2020) (dismissing failure to intervene claim where, *inter alia*, plaintiff failed to specify which defendants were present for which use of alleged force), report and recommendation adopted, No. 19-2027, 2020 WL 6059748 (M.D. Pa. Oct. 14, 2020). Accordingly, Lombardo's failure to intervene claims will also be dismissed.

### D.     Deliberate Indifference to Medical Needs

The Supreme Court of the United States has held that "[t]he Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v.*

*Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Thus, "[d]eliberate indifference to the medical needs of arrestees violates their Fourteenth Amendment right to due process." *Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014).  To allege a claim for denial of medical treatment under the Fourteenth Amendment, a plaintiff must plead: (1) a serious medical need; (2) behavior on the part of the police officers that constitutes deliberate indifference to that need; and (3) a causal connection between the indifference and the plaintiff's injury.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Smith*, 553 F. App'x at 177.  "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Smith*, 553 F. App'x at 177 (quoting *Natale*, 318 F.3d at 582).  Deliberate indifference exists where there is "objective evidence that [a] plaintiff had serious need for medical care" and the need was ignored or delayed for non-medical reasons.  *Id.*  With respect to an arrestee, "a police officer [must] . . . provide medical care to an individual who was injured during the course of an arrest when the need 'is so obvious that a reasonably trained officer would recognize the necessity for attention.'" *Klein*, 374 F. Supp. 3d at 423 (quoting *Bornstad ex rel. Estate of Bornstad v. Honey Brook Twp.*, No. 03-822, 2005 WL 2212359, at *19 (E.D. Pa. Sept. 9, 2005), *aff'd sub nom.* 211 F. App'x 118 (3d Cir. 2007)).  Moreover, a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

       The Court understands Lombardo to allege a Fourteenth Amendment due process claim based on the alleged delay or denial of medical treatment for the injuries he suffered during his arrest.  Assuming *arguendo* that the allegations could be construed to rise to the level of a Fourteenth Amendment claim, Lombardo has not adequately developed the claim and has not

satisfied the *Iqbal* pleading standard.  He asserts that several of his teeth were knocked out and that he was unsteady on his feet, requiring assistance to walk.  He further contends that he requested medical treatment and it was denied.  While Lombardo seeks to present this claim against Det. Hammer, Det. Maczko, Det. Rasich, and three John Does, he does not plead sufficient facts describing the alleged denial and/or delay of medical care, and does not sufficiently tie the alleged violation to these named Defendants.  *See Rode*, 845 F.2d at 1207.  The Court will not speculate based on the allegations as pled.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Accordingly, the deliberate indifference claim based on a lack of medical treatment will be dismissed.

## IV.     CONCLUSION

The Court will grant Lombardo leave to proceed *in forma pauperis*.  As set forth more fully above, the Court is prepared to serve Lombardo's excessive force claims, as well as assault and battery claims, against Det. Hammer and Det. Maczko.  However, all other claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Considering Lombardo's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects identified by the Court.[5]  In the alternative, Lombardo

---

[5] If Lombardo chooses to file an amended complaint, the amended complaint must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim.  Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019).  "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.*  While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019).  This means that the submission of an amended complaint "effectively constitutes an abandonment of any prior complaints filed by a plaintiff." *Smith v. Price*, No. 11-

may advise the Court that he seeks to proceed only on the excessive force, assault, and battery claims against Det. Hammer and Det. Maczko which pass statutory screening.

The Court will deny Lombardo's motion for the appointment of counsel (ECF No. 5), at this time without prejudice to renewal. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

An appropriate Order follows.

                **BY THE COURT:**

                **/s/ John Milton Younge**

                **JOHN MILTON YOUNGE, J.**

---

1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).